**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRYAN COLLINS, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 16-cv-2796 ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| TRAVEL, ENTERTAINMENT, AND MARKETING, LLC, a California limited liability company, | ) ) ) ) |
| Defendant. | ) ) |

**CLASS ACTION COMPLAINT**

Plaintiff Bryan Collins ("Plaintiff") brings this Class Action Complaint against Defendant Travel, Entertainment, and Marketing, LLC ("TEAM"), on behalf of himself and all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### I. NATURE OF THE ACTION

1. TEAM is an online event planning company that specializes in organizing and booking formal outings for sorority and fraternity chapters.

2. In an effort to market products and services, TEAM sent, or directed to be sent on its behalf, unsolicited text messages to the wireless telephones of Plaintiff and each of the members of the Class without prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

3. In order to redress these injuries, Plaintiff seeks: (a) an injunction requiring TEAM to cease all of its unsolicited text message activities; (b) an award of statutory damages to the Class

members under the TCPA; (c) an award of actual damages for common law conversion; and (d) costs and reasonable attorneys' fees.

## II. JURISDICTION AND VENUE

*Subject Matter Jurisdiction*

4. This Court has subject matter jurisdiction over Count I, pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

5. This Court has supplemental jurisdiction over Count II, pursuant to 28 U.S.C. § 1367, because TEAM's conduct forms part of the same case or controversy as to Count I.

*Personal Jurisdiction*

6. This Court has personal jurisdiction over TEAM, pursuant to the Illinois long-arm statute, 735 ILCS 5/2-209, because a substantial portion of the wrongdoing alleged in this Complaint took place in or was directed toward the State of Illinois.

7. This Court also has personal jurisdiction over TEAM because a substantial portion of the wrongdoing alleged in this Complaint took place in and/or was directed toward this State. TEAM, by sending mass text messages into this State soliciting business, has sufficient contacts in this State to render the exercise of jurisdiction by this Court permissible.

*Venue*

8. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in this District.

## III. PARTIES

*Plaintiff*

9. Plaintiff is an individual domiciled in Cook County, Illinois.

*Defendant*

10. TEAM is a limited liability company organized in and existing under the laws of the State of California with its principal place of business located at 1216 West Balboa Boulevard, #4, Newport Beach, California 92661.

11. TEAM maintains a registered agent, Michael Olivas, at the same address.

### IV. FACTUAL BACKGROUND

*Background On Unsolicited SMS Activity*

12. In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

13. One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text messages (usually no more than 160 characters) to and from wireless telephones.

14. SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's wireless phone rings, alerting him or her that a message is being received. As wireless telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

15. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons

to phishing schemes—sent directly to user's cell phones."[1] In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[2]

16. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

17. Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent.

18. As of October 16, 2013, senders of SMS message advertisements for goods or services must obtain the recipient's prior express ***written*** consent.[3]

19. On July 10, 2015, the Federal Communications Commission issued a Declaratory Ruling that further acknowledged the "costly" and "particularly intrusive" nature of unwanted text messages, stating that "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission."[4]

---

[1] Amanda Lenhart, *Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens*, PEW RESEARCH CENTER (Sept. 2, 2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx.

[2] *Id.*

[3] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order (FCC Feb. 15, 2012) (amending 47 C.F.R. 64.1200(a)(2))

[4] *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order*, CG Docket No. 02-278, ¶1 (FCC July 10, 2015).

*Defendant TEAM's Unsolicited SMS Message Advertisements To Plaintiff*

20. As part of its advertising campaign, TEAM sent, and continues to send, unsolicited text messages to Plaintiff's and the Class members' wireless phones without prior express written consent.

21. On January 7, 2015, TEAM sent the following text message ("Text A") to Plaintiff's wireless phone:



22. Thereafter, TEAM sent the following text message ("Text B") to Plaintiff's wireless phone:



23. The "from" field of such transmissions was identified as "882-02."

24. TEAM uses the short code 882-02 to send text messages.

25. Plaintiff never gave TEAM prior express written consent to receive text messages from TEAM.

*Defendant TEAM Uses Text Messages To Advertise Its Services*

26. Text A asks recipients to visit the website "formalbuilder.com" (the "Website").

27. TEAM owns the Website.

28. The Website features TEAM's proprietary interface that allows potential customers of TEAM to plan, coordinate, and book formal events at destination third-party venues, in addition to booking third-party vendors and services, such as photographers, DJ's, and charter buses for the events.

29. The text messages ask recipients to visit the Website so that potential customers can take advantage of TEAM's service to plan their formal event and save money by using TEAM's service.

30. Text A also includes the Internet short link "bit.ly/teamexp."

31. At the time Plaintiff received the text message from TEAM, the short link "bit.ly/teamexp" would redirect text message recipients to one or more of TEAM's websites.

32. Text B asks recipients to visit the Internet short link "http://bit.ly/MYFORMAL" so that recipients can "Get Options" for planning formal events.

33. At the time Plaintiff received the text message from TEAM, the short link "bit.ly/MYFORMAL" would redirect text message recipients to one or more of TEAM's websites.

34. Text B states that if recipients need ideas for a formal event, "we got em!"

35. Accordingly, TEAM designed a marketing plan to send text messages in order to drive customers to its business Website and/or websites to promote its goods and services.

## V.    CLASS ALLEGATIONS

36.    Plaintiff brings this action, as set forth below, on behalf of himself and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All individuals in the United States to whom Defendant Travel, Entertainment, and Marketing, LLC sent a non-emergency, unsolicited text message to the individuals' wireless telephones through the use of an automatic dialing system, at any time within the four years prior to the filing of the instant action (the "Class").

Excluded from the Class are TEAM and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

37.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

38.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. On information and belief, there are thousands of consumers who have been damaged by TEAM's wrongful conduct as alleged herein. The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from TEAM's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

39. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a. Whether the equipment TEAM used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

   b. The manner in which TEAM compiled its list of wireless telephone numbers, including Plaintiff's;

   c. Whether TEAM's conduct constitutes a violation of the TCPA;

   d. Whether TEAM converted to its own use usage of the Class members' wireless telephone plans and components of Class members' wireless phones;

   e. Whether this loss constitutes an asset of economic value;

   f. Whether TEAM's appropriation was unlawful;

   g. Whether Plaintiff and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief, and in what amount(s);

   h. Whether Plaintiff and the Class are entitled to treble damages based on the willfulness of TEAM's conduct; and

   i. Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

40. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claim is typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

41. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute

this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

42. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** TEAM has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

43. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against TEAM, so it would be impracticable for Class members to individually seek redress for TEAM's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CLAIMS ALLEGED

### COUNT I
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of the Class)**

44. Plaintiff incorporates by reference paragraphs 1-43 as if fully set forth herein.

45. TEAM sent unsolicited commercial text messages to the wireless telephone number of Plaintiff and the other Class members *en masse* without their prior express written consent.

46. TEAM sent the text messages, or had them sent on its behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

47. TEAM utilized equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention.

48. By sending the unsolicited text messages to Plaintiff and the Class, TEAM has violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of TEAM's unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the unsolicited text messages on their wireless phones and, under section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

49. Should the Court determine that TEAM's conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

### COUNT II
**Conversion**
**(On behalf of the Class)**

50. Plaintiff incorporates by reference paragraphs 1-43 as if fully set forth herein.

51. By sending text messages to Plaintiff's and the other Class members' wireless telephones, TEAM converted to its own use data usage under Plaintiff's and the other Class members' wireless telephone plans and components of Plaintiff's and the other Class members' wireless telephones.

52. This loss of use constitutes an asset of economic value paid for by Plaintiff and the other Class members when they purchased their wireless telephones and subscribed for wireless telephone service.

53. Immediately prior to the sending of the text messages, Plaintiff and the other Class members owned and had an unqualified right and immediate right to the wireless telephones and the data service under their wireless telephone plans used to receive TEAM's texts.

54. By sending texts (or directing texts to be made on its behalf) TEAM appropriated to its own use the data usage and wireless telephones used to receive the texts in such a manner as to make them unusable or decrease their performance. Such appropriation was wrongful and without authorization.

55. TEAM knew or should have known that such appropriation of the data usage and phone components was wrongful and without authorization.

56. Plaintiff and the other Class members were deprived of the data usage and performance of their wireless telephones, which could no longer be used for any other purpose.

57. Accordingly, Plaintiffs and the other Class members suffered damage as a result of the receipt of the texts.

## VII. JURY DEMAND

58. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff Bryan Collins, individually and on behalf of the Class, requests that the Court enter an Order as follows:

A. Certifying the Class as defined above, appointing Plaintiff Bryan Collins as the representative of the Class, and appointing his counsel as Class Counsel;

B. Finding TEAM liable for violating the TCPA;

C. Awarding of actual and statutory damages;

D. Requiring TEAM to cease all text message activities initiated without prior express written consent, and otherwise protecting the interests of the Class;

E. Awarding of reasonable attorneys' fees and costs; and

F. Awarding such other and further relief that the Court deems reasonable and just.

Dated: March 3, 2016

Respectfully submitted,

BRYAN COLLINS, individually and on behalf of all others similarly situated

By: */s/ Joseph J. Siprut*

Joseph J. Siprut
*jsiprut@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
Richard S. Wilson
*rwilson@siprut.com*
SIPRUT PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

*Counsel for Plaintiff
and the Proposed Putative Class*