# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRYAN COLLINS, individually and on behalf of all others similarly situated, ) ) ) | No. 16-cv-2796 |
| Plaintiff, ) ) | Judge Robert M. Dow, Jr. |
| v. ) ) | |
| TRAVEL, ENTERTATINMENT, AND MARKETING, LLC, a California limited liability company, ) ) ) ) | |
| Defendant. ) | |

## MEMORANDUM ORDER AND OPINION

Plaintiff Bryan Collins ("Plaintiff"), on behalf of himself and a proposed class, brings his complaint [1] against Defendant Travel, Entertainment, and Marketing, LLC ("Defendant" or "TEAM") for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and common law conversion. Before the Court is Defendant's motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and failure to state a claim [20]. Count I, for violation of the TCPA, shall remain in the case. Count II, for common law conversion, is dismissed without prejudice. This case is set for further status hearing on January 25, 2017 at 9:00 a.m. The parties are directed to confer and to submit a joint status report by January 23, 2017 that includes a discovery plan and a statement of whether they wish to schedule a settlement conference prior to engaging in discovery.

## I.      Background[1]

Short Message Services ("SMS") is a messaging system that allows for the transmission and receipt of short text messages to and from wireless telephones. Receiving SMS message

---

[1] For purposes of Defendant's motions to dismiss, the Court assumes as true all well-pled allegations set forth in the complaint [1]. See *Mutter v. Madigan*, 17 F. Supp. 3d 752, 756 (N.D. Ill. 2014).

advertisements "can actually cost their recipients money" because wireless telephone users must either pay their service providers for each text message received or have a usage allocation deducted from their text messaging plans. [1] at 4. Due to growing concerns over unwanted SMS message advertising, the FCC has promulgated rules requiring senders of SMS message advertisements for goods or services to obtain recipients' express written consent prior to sending such messages.

This case concerns Defendant's alleged practice of sending unsolicited SMS messages to wireless telephone numbers without their owners' express written consent. Defendant is an online event planning company specializing in organizing and booking formal outings for sorority and fraternity chapters. Defendant is organized as a California LLC and has its principal place of business in Newport Beach, California. Plaintiff is an individual living in Cook County, Illinois.

On January 7, 2015, Defendant sent an SMS to Plaintiff's wireless phone with the message, "HNY! On Exec this Spring? Use formalbuilder.com & get paid 4 ur feedback! Plus u get to use the free service that helps u save $$ planning Formal! bit.ly/teamexp." [1] at 5. Defendant sent Plaintiff a second SMS message later that night, which read, "Need Formal ideas? Ok, we got em! Free Service, Free Options, No Obligations – Sent to you in 24 hrs! Last min planning = more $$  Get Options here http://bit.ly/MYFORMAL." *Id.* The links formalbuilder.com, bit.ly/teamexp, and http://bit.ly/MYFORMAL directed Plaintiff to Defendant's websites. The formalbuilder.com website ("Website") allows potential customers to plan, coordinate, and book formal events at destination third-party venues and to book third-party vendors and services, such as photographers, DJs, and charter buses. The messages were sent using an SMS "short code." *Id.*

Plaintiff alleges on information and belief that thousands of other consumers have also received unsolicited SMS messages from Defendant and have been damaged as a result.

In Count I of his complaint, Plaintiff alleges that Defendant violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited SMS messages to Plaintiff and the proposed class members on their wireless telephones. Plaintiff alleges that Defendant sent the messages, or had them sent on its behalf, "using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers," and "equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention." [1] at 10. According to Plaintiff, "the Class members suffered actual damages in the form of monies paid to receive the unsolicited text messages on their wireless phones and, under section 227(b)(3)(B), are each entitled to . . . a minimum of $500.00 in damages for each such violation of the TCPA." [1] at 10 (citing 47 U.S.C. § 227(b)(3)(B)).

In Count II, Plaintiff alleges that Defendant's actions constitute common law conversion, by "convert[ing] to its own use data usage under Plaintiff's and the other Class members' wireless telephone plans and components of Plaintiff's and the other Class members' wireless telephones." [1] at 11. As redress, Plaintiff seeks: (1) an injunction requiring Defendant to cease all unsolicited text message activities; (2) an award of statutory damages under the TCPA; (3) an award of actual damages for common law conversion; and (4) costs and reasonable attorneys' fees.

## II.     Legal Standard

Defendant seeks dismissal of Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). "For purposes of a motion to dismiss under either Rule

12(b)(1) or Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor." *Mutter*, 17 F. Supp. 3d at 756. A Rule 12(b)(1) motion challenges federal subject matter jurisdiction. In ruling on the motion, the district court may look beyond the jurisdictional allegations alleged in the complaint and take into consideration whatever evidence has been submitted on the issue to determine if subject matter jurisdiction exists. *County of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 958 (N.D. Ill. 2015). The burden of proof is on the party asserting that jurisdiction exists. *Id.* A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

### III. Analysis

#### A. 12(b)(1)

Defendant argues that Plaintiff's complaint should be dismissed because it lacks sufficient factual allegations to establish that Plaintiff has Article III standing. Specifically, Defendant asserts that Plaintiff fails to allege that "he himself" suffered injury in the form of an actual monetary loss. [20] at 4.

The Court concludes that it has subject matter jurisdiction over Plaintiff's complaint. The TCPA provision on which Plaintiff's claim relies does not require that a plaintiff incur actual monetary losses in order to bring suit for a TCPA violation. Instead, it provides that "[a] person

or entity may . . . bring in an appropriate court . . . an action to recover for actual monetary loss from such a violation, *or* to receive $500 in damages for each such violation, whichever is greater[.]" 47 U.S.C. § 227(b)(3)(B) (emphasis added); see also *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 491-92 (7th Cir. 2014) (no monetary loss need be shown to entitle the recipient of an unsolicited "junk fax" advertisement to statutory damages under the TCPA); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010 (N.D. Ill. 2010) ("the plain language of the TCPA does not require Plaintiff to allege that he was charged for the relevant call at issue in order to state a claim pursuant to § 227"); *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 777 (N.D. Ill. 2008) ("The TCPA allows recovery of either actual damages, or statutory damages in the amount of '$500 in damages for each . . . violation[.]'" (quoting 47 U.S.C. § 227(b)(3)(B)).

Thus, a plaintiff "need not allege monetary loss in order to bring suit for violations of the TCPA," and a plaintiff sufficiently alleges that he or she suffered an "injury in fact" as required for Article III standing by alleging that the "defendants violated interests that are protected by the TCPA." *Martin v. Leading Edge Recovery Sols., LLC*, 2012 WL 3292838, at *2, 4 (N.D. Ill. Aug. 10, 2012). Defendant relies on *Spokeo, Inc. v. Robins*, 136 S. Ct. 1550 (2016), a Fair Credit Reporting Act ("FCRA") case, to argue that the TCPA's allowance of statutory damages does not excuse Plaintiff's need to allege and prove an actual injury in fact. See *Spokeo*, 136 S. Ct. at 1550 (consumer could not satisfy the injury-in-fact demands of Article III standing by alleging a bare procedural violation of the FCRA by website operator, in allegedly publishing inaccurate information about consumer). But *Spokeo* recognizes that "intangible injuries can nevertheless be concrete," and that, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.* at 1549.

5

"Congress has the authority to create a legal right 'the denial of which would, in and of itself, give rise to the type of injury necessary to establish standing in conformance with Article III' [and] has done so with the TCPA." *Davies v. W.W. Grainger, Inc.*, 2016 WL 1298667, at *2 (N.D. Ill. Apr. 4, 2016) (quoting *Kyles v. J.K. Guardian Sec. Servs., Inc.,* 222 F.3d 289, 296 (7th Cir. 2000)).

Here, Plaintiff alleges facts plausibly suggesting that Defendant violated an interest protected by the TCPA, namely, a privacy interest in not receiving and having to tend to unsolicited SMS messages from advertisers. See *Martin*, 2012 WL 3292838, at *2 ("Plaintiffs' allegations that they were forced to tend to unwanted calls and that the calls used airtime from their cell phone plans establishes a violation of both the privacy and property interests that are protected by the TCPA."); *Torres v. Nat'l Enter. Sys., Inc.*, 2012 WL 3245520, at *2 (N.D. Ill. Aug. 7, 2012) (concluding that "[t]he harm alleged by Torres is not some type of abstract and hypothetical injury" where "Torres clearly indicates that the unsolicited phone messages on her cell phone are directly connected to the alleged concrete nuisance to her and the invasion of her privacy").

Further, despite Defendant's argument to the contrary, Plaintiff does allege that the class, in which Plaintiff is included, incurred actual monetary damages as a result of Defendant's TCPA violations. Specifically, Plaintiff alleges in Count I of the complaint that "the Class members suffered actual damages in the form of monies paid to receive the unsolicited text messages on their wireless phones." [1] at 10. Defendant has cited no case law suggesting that these allegations are insufficiently robust to state a claim for violation of the TCPA. Therefore, the Court denies Defendant's motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1).

**B.     12(b)(6)**

   **1.     TCPA Claim**

Defendant argues that Plaintiff's TCPA claim should be dismissed because Plaintiff's allegation that Defendant used an automatic telephone dialing system ("ATDS") are too conclusory, as they simply parrot the TCPA language that defines ATDS.

The Court concludes that Plaintiff's TCPA claim should not be dismissed for failure to sufficiently allege that Defendant used an ATDS to send SMS messages to Plaintiff and the class. There are conflicting lines of cases from this district regarding the level of detail required for pleading the use of an ATDS. See *Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1001-03 (N.D. Ill. 2014) (describing the conflicting lines of cases). In some cases, allegations that the defendant used an ATDS were sufficient, standing alone, to state a TCPA claim. *Id.* at 1002-03; see also *Johansen v. Vivant, Inc.*, 2012 WL 6590551, at *2 (N.D. Ill. Dec. 18, 2012) ("The first set of cases hold[s] that reciting the statutory definition of an ATDS in the complaint suffices and that the validity of that claim is an evidentiary matter premature for a motion to dismiss."). These cases acknowledge that "it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail" (or here, for a communication delivered via text message). *Torres*, 2012 WL 3245520, at *3.

In other cases, courts have required more factual detail indicating that it was plausible that the defendant used an ATDS. *Sojka*, 35 F. Supp. 3d at 1001-02. In such cases, the courts have indicated that a plaintiff could meet the pleading standard by, for example, "describ[ing] the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, the generic content of the message he

received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded or delivered via an ATDS." *Johansen*, 2012 WL 6590551, at *3 (complaint that "provide[d] no information about the two messages [the plaintiff] allegedly received from [the defendant] other than stating that [the defendant] left pre-recorded messages on his cellular phone using an ATDS" was insufficient to state claim for violation of the TCPA).

The Court need not decide which standard is appropriate, because Plaintiff's complaint survives under either standard. Plaintiff parrots the TCPA's definition of an ATDS. See 47 U.S.C. § 227(a)(1) (describing an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers"). Specifically, Plaintiff alleges that Defendant sent the offending messages, or had them sent on its behalf, "using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers," and "equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention." [1] at 10; see also *id.* (alleging that the SMS members were sent to Plaintiff and class members "*en masse*").

Plaintiff also provides specific factual details concerning the messages he received. The messages were generic and aimed not at Plaintiff personally, but at a large group of potential customers, *i.e.*, individuals who have some involvement with sorority or fraternity formals. They do not provide any way for Plaintiff to reach a human, but instead were sent from an SMS "short code" and merely provide links to Defendant's websites to check out the services Defendant offers. Plaintiff also alleges more generally that spam now comes in the "form of unwanted text messages of all kinds," and that this is why the FCC decided to promulgate rules requiring senders of SMS message advertisements for goods or services to obtain recipients' express

8

written consent prior to sending such messages. All of these allegations plausibly suggest that Defendant's messages to Plaintiff came from an ATDS. Cf. *Izsak v. Draftkings, Inc.*, 2016 WL 3227299, at *3 (N.D. Ill. June 13, 2016) (recognizing that a plaintiff could meet the stricter pleading standard by "describ[ing] the promotional content or the generic, impersonal nature of the text message allegedly sent using an ATDS"); *Strickler v. Bijora, Inc.*, 2012 WL 5386089, at *2 (N.D. Ill. Oct. 30, 2012) (concluding that, at the pleading stage, "[i]t can be inferred that . . . messages were sent en masse" using an ATDS "given the alleged content of the messages targeting 'Ladies!' (not specific individuals) and advertising 'Blowout!' sales, fashion shows, and parties"); *Abbas v. Selling Source, LLC*, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) (defendant's use of a SMS short code to send messages to plaintiff suggested that Defendant may have used equipment with ATDS capability).

In its reply brief, Defendant argues that "en masse generic text messages can be sent from a wide array of platforms which do not constitute an ATDS," and therefore "no reasonable inference can be made in this case that an ATDS was utilized." [26] at 4-5. But at the pleading stage Plaintiff is not required to show that it is more likely than not that Defendant used an ATDS; instead, Plaintiff's allegations must merely be plausible. Plaintiff's allegations are sufficient to meet this minimal burden. It is plausible that the alleged masse generic text messages that Plaintiff received were sent from an ATDS, even if it is also plausible that Defendant might have used another platforms that does not constitute an ATDS. Therefore, the Court denies Defendant's motion to dismiss Plaintiff's TCPA claim under Rule 12(b)(6).

### 2. Conversion Claim

Under Illinois law, a claim for "[c]onversion requires the plaintiff establish by a preponderance of the evidence: (1) the defendant's unauthorized and wrongful assumption of

control, dominion, or ownership over the plaintiff's personal property; (2) the plaintiff's right in the property; (3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) the plaintiff's demand for possession of the property." *Longo Realty v. Menard, Inc.*, 59 N.E.3d 1, 11 (Ill. App. 2016). Defendant argues that Plaintiff's conversion claim should be dismissed because Plaintiff does not allege facts supporting the first, third, or fourth elements of a conversion claim and because Plaintiff's claim is barred by Illinois' *de minimis* doctrine. In response, Plaintiff agrees to withdraw his conversion claim. See [25] at 6, n.1. Therefore, the Court grants Defendant's motion to dismiss the conversion claim.

## IV. Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendant's motion to dismiss. Count I, for violation of the TCPA, shall remain in the case. Count II, for common law conversion, is dismissed without prejudice. This case is set for further status hearing on January 25, 2017 at 9:00 a.m. The parties are directed to confer and to submit a joint status report by January 23, 2017 that includes a discovery plan and a statement of whether they wish to schedule a settlement conference prior to engaging in discovery.

Dated: January 10, 2017

Robert M. Dow, Jr.
United States District Judge